## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RONALD STONE** : | |
| : | |
| : | **CIVIL ACTION COMPLAINT NO**. |
| Plaintiff, : | |
| : | **JURY TRIAL OF TWELEVE (12)** |
| : | **DEMANDED** |
| v. : | |
| : | |
| **TRANS UNION LLC** : | |
| : | |
| **and** : | |
| : | |
| **EQUIFAX INFORMATION SERVICES** : | |
| **LLC** : | |
| : | |
| **and** : | |
| : | |
| **FORD MOTOR CREDIT COMPANY LLC** : | |
| **d/b/a FORD MOTOR CREDIT** : | |
| Defendants. : | |

## COMPLAINT

NOW comes the Plaintiff, Ronald Stone (hereinafter the "Plaintiff"), through their Counsel of record to make their allegations known against the Defendants by and through their complaint that alleges the following:

## PRELIMINARY STATEMENT

1.      This is an action for actual, statutory and punitive damages, costs, and attorney's fees pursuant to 15 U.S.C. §1681 et seq. (Federal Fair Credit Reporting Act)

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

1

3.      Venue in this District is appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Eastern District of Pennsylvania. Plaintiff sent a dispute letter to Trans Union in the Eastern District of Pennsylvania where that letter was processed by Trans Union and then an ACDV was sent to Ford Motor Credit Company, LLC d/b/a Ford Motor Credit. Venue is also proper under 28 U.S.C. §1391(b)(1) due to the fact Trans Union has a major corporate office in the Eastern District of Pennsylvania and thus resides in the Eastern District of Pennsylvania. Ford Motor Credit Company, LLC d/b/a Ford Motor Credit, conducts business on a regular basis in the Eastern District of Pennsylvania. Furthermore, Ford Motor Credit Company, LLC d/b/a Ford Motor Credit, has been continually reporting data on Plaintiff's account with them to Trans Union's corporate office located in the Eastern District of Pennsylvania. Additionally, when Trans Union sent Ford Motor Credit Company, LLC d/b/a Ford Motor Credit the ACDV in regards to Plaintiff's dispute of the Ford Motor Credit Company, LLC d/b/a Ford Motor Credit account the dispute response was sent by Ford Motor Credit Company, LLC d/b/a Ford Motor Credit to Trans Union's corporate office located in the Eastern District of Pennsylvania. Thus venue is appropriate to Ford Motor Credit Company, LLC d/b/a Ford Motor Credit under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claim against Ford Motor Credit Company, LLC d/b/a Ford Motor Credit occurred in the Eastern District of Pennsylvania. Additionally, Ford Motor Credit Company, LLC d/b/a Ford Motor Credit has approximately eighteen office locations in the Eastern District of Pennsylvania. Based on information and belief, Equifax is reporting accounts on over one million consumers in the Eastern District of Pennsylvania and is thus subject to this court's jurisdiction.

**PARTIES**

4.     Plaintiff is a natural person and is a citizen of the United States. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5.     Defendant, Trans Union, LLC, (hereinafter Trans Union) is a For-Profit Limited Liability Company registered to do business in Pennsylvania and with a registered agent in Pennsylvania. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f) and engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d) to third parties. Based on information and belief, Trans Union's main corporate office is located in the Eastern District of Pennsylvania.

6.     Defendant, Equifax Information Services, LLC, (hereinafter Equifax) is a For-Profit Limited Liability Company registered to do business in Pennsylvania and with a registered agent in Pennsylvania. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f) and engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d) to third parties. Based on information and belief, Equifax is reporting consumer credit files on over two million consumers in Pennsylvania.

7.     Defendant, Ford Motor Credit Company, LLC d/b/a Ford Motor Credit, (hereinafter, FMCC) is a for profit company registered to do business in Pennsylvania and with a registered agent in Pennsylvania. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions. FMCC is a financial institution actively conducting business in Eastern District of Pennsylvania.  FMCC sends credit information on consumer profiles to Trans Union on a regular basis in the Eastern District of

Pennsylvania.

## FACTUAL ALLEGATIONS

8.      Plaintiff incorporates by reference all the foregoing paragraphs as though the same were set forth at length herein.

9.      Plaintiff's debt on FMCC account # ****1340 arose from an auto loan. The debt from this account was eliminated on or about 09/03/2014 which brought it current with a $0 balance. Plaintiff debt obligation on FMCC account # ****1340 ceased to exist on or before 09/03/2014. Despite the debt related to FMCC account # ****1340 being fully eliminated on or before 09/03/2014, FMCC continued to report an erroneous pay status of Account 30 Days Past Due Date as of 11/06/2018.

10.      Plaintiff's debt on FMCC account # ****1340 arose from an auto loan. The debt from this account was eliminated on or about 09/2014 which brought it current with a $0 balance. Plaintiff debt obligation on FMCC account # ****1340 ceased to exist on or before 09/2014. Despite the debt related to FMCC account # ****1340 being fully eliminated on or before 09/2014, FMCC continued to report an erroneous pay status of 30-59 Days Past Due as of 11/06/2018.

11.       TransUnion's report dated 11/06/2018 reported Plaintiff's FMCC account with a current "Pay Status: Account 30 Days Past Due Date" even though Plaintiff's debt on this account ceased to exist on or before 09/03/2014.

12.      Equifax's report dated 11/06/2018 reported Plaintiff's FMCC account with a current "Pay Status: 30-59 Days Past Due" even though Plaintiff's debt on this account ceased to exist on or before 09/2014.

13.      Although Plaintiff's account had a zero balance, Plaintiff's Trans Union report dated 11/06/2018 reported the "Pay Status: Account 30 Days Past Due Date".  It is impossible and

4

incorrect for an account that is closed with a "0" balance to still be reporting as late as of 11/06/2018. Not only is the FMCC account false on the face of the credit report but this reporting is extremely misleading because it makes it look like the Plaintiff is still late on this account that was previously brought to a zero balance.

14.    Although Plaintiff's account had a zero balance, Plaintiff's Equifax report dated 11/06/2018 reported the "Pay Status: 30-59 Days Past Due".  It is impossible and incorrect for an account that is closed with a "0" balance to still be reporting as late as of 11/06/2018. Not only is the FMCC account false on the face of the credit report but this reporting is extremely misleading because it makes it look like the Plaintiff is still late on this account that was previously brought to a zero balance.

15.    As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to Trans Union disputing the erroneous current pay status of Account 30 Days Past Due Date that FMCC was reporting to Trans Union. Based on information and belief, Trans Union sent an ACDV to FMCC to alert them of Plaintiff's dispute and give them the opportunity to investigate Plaintiff's dispute and correct or delete any incorrect data they were reporting to Trans Union. Instead of correcting the erroneous historical pay status they were reporting to Trans Union on FMCC account # ****1340, FMCC verified the inaccurate pay status to Trans Union and continued to report a historical pay status to Trans Union instead of a current pay status on Plaintiffs account with FMCC. As a result of Plaintiff's dispute, FMCC verified the current pay status of the account as accurate and instructed Trans Union to continue to report an inaccurate pay status of "Pay Status: Account 30 Days Past Due Date".  As a result of FMCC unreasonable and lacking investigation, Trans Union continued to report the inaccurate pay status on Plaintiff's

Trans Union Credit Report at the instructions of FMCC. Plaintiff's latest Trans Union credit report dated 11/06/2018 is currently reporting the same inaccurate pay status on the FMCC account.

16.     As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to Equifax disputing the erroneous current pay status of 30-59 Days Past Due that FMCC was reporting to Equifax. Based on information and belief, Equifax sent an ACDV to FMCC to alert them of Plaintiff's dispute and give them the opportunity to investigate Plaintiff's dispute and correct or delete any incorrect data they were reporting to Equifax. Instead of correcting the erroneous historical pay status they were reporting to Equifax on FMCC account # ****1340, FMCC verified the inaccurate pay status to Equifax and continued to report a historical pay status to Equifax instead of a current pay status on Plaintiffs account with FMCC.  As a result of Plaintiff's dispute, FMCC verified the current pay status of the account as accurate and instructed Equifax to continue to report an inaccurate pay status of "Pay Status: 30-59 Days Past Due".  As a result of FMCC unreasonable and lacking investigation, Equifax continued to report the inaccurate pay status on Plaintiff's Equifax Credit Report at the instructions of FMCC. Plaintiff's latest Equifax credit report dated 11/06/2018 is currently reporting the same inaccurate pay status on the FMCC account.

17.     Based on information and belief, Trans Union and Equifax have abandoned and been derelict in its duties under the Fair Credit Reporting Act and has not conducted its own independent investigation into Plaintiff's dispute of the FMCC account.

18.     Trans Union and Equifax did not follow reasonable procedures to assure maximum possible accuracy and has been reporting false and inaccurate information even after it knew or should have known the information was incorrect.

19.     FMCC did not provide a good faith and reasonable investigation into the disputed

6

current pay status on the account they report to Trans Union and Equifax on Plaintiff. FMCC's investigation was unreasonable and lacking because it failed to lead FMCC to correct the inaccurate pay status they were reporting to Trans Union and Equifax on Plaintiff. A reasonable investigation would have discovered they should be reporting the account to Trans Union as "was previously Account 30 Days Past Due Date" or "Current, was previously Account 30 Days Past Due Date" and a reasonable investigation would have discovered they should be reporting the account to Equifax as "was previously 30-59 Days Past Due" or "Current, was previously 30-59 Days Past Due".  If the account had been reported in either of these methods, it would have no longer been reviewed as a current past due obligation and would have had much less of an impact on Plaintiff's credit profile after two years from the date the account balance was eliminated. Instead the FMCC account is being reported as a current past due obligation monthly.

20.     Trans Union did not provide a good faith investigation into the disputed pay status of the FMCC account. Based on information and belief, Trans Union did nothing more than parrot data from FMCC in their investigation.

21.     Equifax did not provide a good faith investigation into the disputed pay status of the FMCC account. Based on information and belief, Trans Union did nothing more than parrot data from FMCC in their investigation.

22.     The FMCC account is not only inaccurate, but it is also misleading, which the Third Circuit has addressed. The Third Circuit has agreed with other circuits that even if information in a report is technically correct, it may still be inaccurate if, through omission, it "create[s] a materially misleading impression." *Seamans v. Temple University*, 744 F.3d 853, 865 (3rd Cir. 2014) (quoting *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008). Further, the court in *Seamans* agreed that whether technically accurate information was

"'misleading in such a way and to such an extent that [it] can be expected to have an adverse effect'" is generally a question to be submitted to the jury. 744 F.3d at 865 (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)). *See also Hillis v. Trans Union, LLC*, 969 F.Supp.2d 419, 421 (E.D. P.A. Sept 18, 2013) (agreeing that "inaccurate" information, in the FCRA context, refers to information that either is factually incorrect or creates a misleading impression).

23.     Trans Union has a statutory duty to have reasonable procedures to assure maximum accuracy. Their procedures regarding the reporting of current pay statuses are not assuring accuracy, much less maximum accuracy. Trans Union's lacking policies and procedures are continuing to allow data furnishers such as FMCC, to report historical pay statuses where a current pay status is needed.

24.     Equifax has a statutory duty to have reasonable procedures to assure maximum accuracy. Their procedures regarding the reporting of current pay statuses are not assuring accuracy, much less maximum accuracy. Equifax's lacking policies and procedures are continuing to allow data furnishers such as FMCC, to report historical pay statuses where a current pay status is needed.

25.     The reporting of this inaccurate payment status on Plaintiff's credit report negatively reflects upon the Plaintiff, their credit repayment history, their financial responsibility as a debtor and their credit worthiness. The inaccurate pay status was furnished by FMCC and reported by Trans Union and Equifax, misrepresenting the payment rating and/or status of Plaintiff's account, and is currently being reported and reflected upon Plaintiff's most recent credit report, resulting in lowering Plaintiff's credit score and furthering and increasing Plaintiff's damages.

26.     Plaintiff's credit reports, credit information and file formulated by Trans Union and Equifax have been viewed by current and potential credit grantors and extenders of credit, as indicated by inquiries on each of their credit reports. The inaccurate information furnished by FMCC and reported by Trans Union and Equifax is continuing to damage the Plaintiff's credit rating as well as their credit reputation.

27.     As a result of Defendants, Trans Union, Equifax and FMCC's conduct, Plaintiff has suffered great physical, emotional and mental pain and anguish, all to Plaintiff's great detriment and loss.

28.     As a result of Defendants conduct, Plaintiff has suffered actual damages all to Plaintiff's great detriment and loss.

29.     At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

30.     At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## CAUSES OF ACTION

31.     Plaintiff incorporates by reference the foregoing paragraphs and footnotes as though the same were set forth at length herein.

32.     This suit is based upon the Defendants violations of the Fair Credit Reporting Act. All causes of action were the producing causes of damages which Plaintiff has suffered.

### COUNT I—VIOLATION OF THE FAIR REPORTING ACT

33.     Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

34.     This suit is brought against the Defendants as the damages made the basis of this suit were caused by their violations of the FCRA. In all instances of violating the FCRA, Defendant did so willfully and/or negligently. Under, 15 U.S.C. §1681n and §1681o, the Plaintiff is entitled to recover actual damages, punitive damages, and reasonable attorneys' fees.

15 U.S.C. §1681n, "Civil Liability for willful noncompliance" reads:

> (a) Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of
> (1) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1000
> (2) such amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys fees as determined by the court.

And 15 U.S.C. §1681o, "Civil Liability for negligent noncompliance" reads:

> (a) Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of:
>
> (1) any actual damages sustained by the consumer as a result of the failure; and
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action with reasonable attorney's fees as determined by the court.

### ***TransUnion's FCRA Violations***

35.     Trans Union violated their duty under 15 U.S.C. §1681i(a)(1)(A) to conduct a good faith investigation into Plaintiff's notice of dispute. Plaintiff requested Trans Union to reinvestigate the inaccurate reporting of the current pay status on their FMCC account via detailed and thorough dispute letter specifically disputing the inaccurate current "Pay Status: Account 30 Days Past Due Date".

36.     The dispute was detailed, thorough and informed Trans Union of all the relevant information regarding the inaccuracies of the accounts and provided enough information to show the accounts were being reported inaccurately. A portion of the dispute letter is reproduced below.

RE:     Ronald Stone



DOB
SSN        0082

**Attn TransUnion Dispute Department:**

I am sending you this dispute letter on behalf of my client listed above. The following account has a balance of $0 with a late status. This is simply incorrect. If my client owes them no money and has no payments that are behind, then it is impossible for their current status to be listed as late. Please see below:

| Data Furnisher | Account Number | Status | Balance |
|---|---|---|---|
| FMCC | ****1340 | 30 Days Past Due | $0 |

If this incorrect information is not removed or corrected from my client's credit report further action might be instituted under 15 U.S.C. § 1681. If necessary or required, we will obtain local and licensed counsel to aid in this matter. The data furnisher that we are disputing above has a lengthy history of FCRA violations, which can be proven by viewing PACER. Please let this serve notice that the information that they have in the past, as well as current credit data that they are providing you, is inaccurate and cannot be trusted. Please respond to this dispute by sending your investigation results to my law firm, McCarty & Raburn Law Firm, A Consumer Law Firm PLLC, 3000 Custer Road, Suite 270 #1501, Plano, TX 75075.

Sincerely,

Jonathan Raburn

37.     Trans Union did not conduct a good faith and reasonable investigation into Plaintiff's dispute. If they had, they would have discovered that FMCC was reporting an incorrect historical pay status to them instead of an accurate current pay status. All the information Trans Union needed to determine this was in its own records and files. Based on information and belief, Trans

Union forsook its duties under the Fair Credit Reporting Act and has not conducted its own independent investigation into Plaintiff's dispute of the FMCC account. Trans Union simply parroted data from an ACDV sent to it by FMCC. Based on information and belief, Trans Union did not place one call or send one email investigating Plaintiff's dispute of the FMCC account. Trans Union simply regurgitated data from the ACDV.

38.     The disputed account has a current pay status that is "Pay Status: Account 30 Days Past Due Date" even though Trans Union is currently reporting Plaintiff's accounts with a "$0" balance. It is impossible for Plaintiff to make "$0" payments to bring the account current. With this type of reporting, Plaintiff will never be able to bring the accounts current. A reproduction of the inaccurate reporting is seen below.

**FORD MOTOR CREDIT** #4336**** ( POB 542000, OMAHA, NE 68154, (800) 727-7000 )
We investigated the information you disputed and updated: **Rating**. Here is how this item appears on your credit report following our investigation.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date Opened: | 12/30/2007 | **Balance:** | $0 | | **Pay Status:** | >Account 30 Days Past Due Date< |
| Responsibility: | Individual Account | **Date Updated:** | 09/03/2014 | | | |
| Account Type: | Installment Account | **Payment Received:** | 09/03/2014 ($1,671) | | **Terms:** | Monthly for 81 months |
| Loan Type: | AUTOMOBILE | **Last Payment Made:** | 09/03/2014 | | **Date Closed:** | 09/03/2014 |
| | | **High Balance:** | $33,980 | | | >Maximum Delinquency of 30 days in 03/2012 and in 09/2014< |

Remarks: CLOSED
Estimated month and year that this item will be removed for: 07/2021

| | 08/2014 | 07/2014 | 06/2014 | 05/2014 | 04/2014 | 03/2014 | 02/2014 | 01/2014 | 12/2013 | 11/2013 | 10/2013 | 09/2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | 30 | OK | OK | OK | OK | OK | OK | OK | 30 | OK | 30 | OK |
| | 08/2013 | 07/2013 | 06/2013 | 05/2013 | 04/2013 | 03/2013 | 02/2013 | 01/2013 | 12/2012 | 11/2012 | 10/2012 | 09/2012 |
| Rating | OK | OK | 30 | OK | OK | OK | OK | 30 | OK | OK | OK | OK |
| | 08/2012 | 07/2012 | 06/2012 | 05/2012 | 04/2012 | 03/2012 | 02/2012 | 01/2012 | 12/2011 | 11/2011 | | |
| Rating | 30 | OK | OK | 30 | OK | 30 | OK | OK | OK | OK | | |

39.     Trans Union was notified and made aware of the specific issues from the dispute letter. It should have been easy for Trans Union to determine that the accounts were extremely inaccurate with the information that was provided.

40.     Trans Union is allowing the data furnisher, FMCC, to report historical data within a data field for the *current status* of the account. When a *current status* code is used to report historical data, the credit scoring algorithm's treat the historical data as *current data*. The effect is

obvious. The erroneous status decreases the consumer's credit worthiness by implying that the consumer is currently late on an existing obligation. In other words, if FMCC would have reported Plaintiff's FMCC account as previously late on their loan—an accurate reporting, Plaintiff would not be here today.

41.    The fact that Trans Union is currently reporting inaccurate information on Plaintiff's credit profiles/credit reports to the best of Plaintiff's information and belief, which are viewable and have been viewed by third parties, is proof that Trans Union did not conduct a reasonable investigation. If Trans Union would have thoroughly investigated the issues, they would have determined that the accounts were paid off, with a "$0" balance and still reporting as if Plaintiff is currently late and past due. If Trans Union had conducted a reasonable and good faith investigation they would have corrected or deleted the Plaintiff's accounts that are inaccurate and misleading.

The section entitled "Procedure in case of disputed accuracy" under 15 U.S.C. §1681i(a)(1)(a) reads:

(a) Reinvestigations in case disputed information

(1) Reinvestigation required

(A) In general-- Subject to subjection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30 day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

And:

15  U.S.C. §1681i(a)(5) reads:

(5) Treatment of Inaccurate or Unverifiable Information

(A)*In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-

    (i)    promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

    (ii)    promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

42.    Trans Union is currently violating 15 U.S.C. §1681e(b), by not following reasonable procedures to assure maximum possible accuracy. If Trans Union was complying with 15 U.S.C. §1681e(b), it would place a filter or formula in its reporting system that would suppress or block accounts with a zero balance from being reported with a current status of past due or late.

43.    Plaintiff's debt on the FMCC account were fully eliminated, but Trans Union continued to report the accounts with a late/past due status. If Trans Union had reasonable procedures, they would not allow an account to report as though the account is currently past due, with a "$0" balance. This simply makes no logical sense. Trans Union should be reporting the account as "current" or was "previously past due" and not "past due." These accounts are reporting as though the Plaintiff is currently past due each month. With this type of reporting, Plaintiff will never be able to make their account current. Trans Union lacks the procedures to avoid such faulty reporting. Trans Union knows that this account was paid, however, they continue to report a current status as past due.

15 U.S.C. §1681e(b) reads as follows:

    (a)  Accuracy of the Report

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures as assure maximum

14

possible Accuracy of the information concerning the individual about whom the report relates.

44.  Trans Union has been on notice that reporting an account with a $0 balance and a late status is not accurate. Trans Union was a co-defendant in *Macik v. JPMorgan Chase Bank, N. A., et al.*: U.S. District Court for the Southern District of Texas, Galveston Division (Case 3:14-cv-44). Plaintiff's Counsel filed suit against Transunion, Equifax and JPMorgan Chase bank in Galveston, Texas, alleging that they were reporting her pay status as 90 days past due, with a zero ($) balance, even though the account was paid off five years earlier. Macik lost a home loan because the program that is used in determining eligibility specifically stated that her Chase account was late two or more times in the last twelve months, even though the loan it was referring to was paid in full five (5) years earlier.

45.    The Macik jury determined that reporting an account with a $0 balance, and a current late pay status, is not only inaccurate, but a willful violation of the FCRA. Trans Union knows this because they were a co-defendant and had counsel present when the jury verdict was rendered as well as receiving an ECF copy of the ruling.  Even though this verdict was from an outside circuit, Plaintiff cites it simply to show that this inaccurate reporting is an issue that not only should be determined by a jury, but that, in fact, a jury has already returned a verdict on the issue deeming this type of reporting as inaccurate and a willful violation of the FCRA.

## ***Third Parties have viewed Plaintiff's Trans Union Credit Report***

46. The negative tradeline(s) reported by FMCC on Plaintiff's Trans Union Credit report have been viewed by third parties all to the detriment and loss of the Plaintiff.

47.    The following potential extenders of credit have reviewed Plaintiff's Trans Union Credit report and viewed the inaccurate FMCC account on it:

a.  XXXX on MONTH, DAY YEAR;

    b.  XXXX on MONTH, DAY YEAR;

    c.  XXXX on MONTH, DAY YEAR;

    d.  XXXX on MONTH, DAY YEAR.

48.     Plaintiff has suffered actual harm due to Trans Union still reporting the negative tradeline provided by FMCC on Plaintiff's Trans Union report even though Trans Union was put on notice of the inaccurate negative reporting through Plaintiff's dispute letter.

49.     The conduct of the Defendant was the direct and proximate cause, as well as, a substantial factor in bringing about the serious injuries, damages and harm to Plaintiff that are outlined above and, as a result, Defendant is liable to compensate Plaintiff for the full amount of actual, statutory, compensatory and punitive damages, as well as, such other relief, permitted by law.

### *Equifax's FCRA Violations*

50.     Equifax violated their duty under 15 U.S.C. §1681i(a)(1)(A) to conduct a good faith investigation into Plaintiff's notice of dispute. Plaintiff requested Equifax to reinvestigate the inaccurate reporting of the current pay status on their FMCC account via detailed and thorough dispute letter specifically disputing the inaccurate current "Pay Status: ".

51.     The dispute was detailed, thorough and informed Equifax of all the relevant information regarding the inaccuracies of the accounts and provided enough information to show the accounts were being reported inaccurately. A portion of the dispute letter is reproduced below.

RE:     Ronald Stone



DOB
SSN          0082

**Attn Equifax Dispute Department:**

I am sending you this dispute letter on behalf of my client listed above. The following account has a balance of $0 with a late status. This is simply incorrect. If my client owes them no money and has no payments that are behind, then it is impossible for their current status to be listed as late. Please see below:

| Data Furnisher | Account Number | Status | Balance |
|---|---|---|---|
| FMCC | ****1340 | 30 Days Past Due | $0 |

If this incorrect information is not removed or corrected from my client's credit report further action might be instituted under 15 U.S.C. § 1681. If necessary or required, we will obtain local and licensed counsel to aid in this matter. The data furnisher that we are disputing above has a lengthy history of FCRA violations, which can be proven by viewing PACER. Please let this serve notice that the information that they have in the past, as well as current credit data that they are providing you, is inaccurate and cannot be trusted. Please respond to this dispute by sending your investigation results to my law firm, McCarty & Raburn Law Firm, A Consumer Law Firm PLLC, 3000 Custer Road, Suite 270 #1501, Plano, TX 75075.

Sincerely,

Jonathan Raburn

52.     Equifax did not conduct a good faith and reasonable investigation into Plaintiff's dispute.  If they had, they would have discovered that FMCC was reporting an incorrect historical pay status to them instead of an accurate current pay status. All the information Equifax needed to determine this was in its own records and files. Based on information and belief, Equifax forsook its duties under the Fair Credit Reporting Act and has not conducted its own independent investigation into Plaintiff's dispute of the FMCC  account. Equifax simply parroted data from an ACDV sent to it by FMCC. Based on information and belief, Equifax did not place one call or

send one email investigating Plaintiff's dispute of the FMCC account. Equifax simply regurgitated data from the ACDV.

53.     The disputed account has a current pay status that is "Pay Status: 30-59 Days Past Due" even though Equifax is currently reporting Plaintiff's accounts with a "$0" balance.. It is impossible for Plaintiff to make "$0" payments to bring the account current. With this type of reporting, Plaintiff will never be able to bring the accounts current. A reproduction of the inaccurate reporting is seen below.



54.     Equifax was notified and made aware of the specific issues from the dispute letter. It should have been easy for Equifax to determine that the accounts were extremely inaccurate with the information that was provided.

55.     Equifax is allowing the data furnisher, FMCC to report historical data within a data field for the *current status* of the account. When a *current status* code is used to report historical data, the credit scoring algorithm's treat the historical data as *current data*. The effect is obvious. The erroneous status decreases the consumer's credit worthiness by implying that the consumer is currently late on an existing obligation. In other words, if FMCC would have reported Plaintiff's FMCC account as previously late on their loan—an accurate reporting, Plaintiff would not be here today.

56.     The fact that Equifax is currently reporting inaccurate information on Plaintiff's credit profiles/credit reports to the best of Plaintiff's information and belief, which are viewable and have been viewed by third parties, is proof that Equifax did not conduct a reasonable investigation. If Equifax would have thoroughly investigated the issues, they would have determined that the accounts were paid off, with a "$0" balance and still reporting as if Plaintiff is currently late and past due. If Equifax had conducted a reasonable and good faith investigation they would have corrected or deleted the Plaintiff's accounts that are inaccurate and misleading.

The section entitled "Procedure in case of disputed accuracy" under 15 U.S.C. §1681i(a)(1)(a) reads:

(a)  Reinvestigations in case disputed information

(1) Reinvestigation required

(A) In general-- Subject to subjection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30 day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

And:

16  U.S.C. §1681i(a)(5) reads:

(5) Treatment of Inaccurate or Unverifiable Information

(A)*In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-

(iii)   promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

(iv)   promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

57.     Equifax is currently violating 15 U.S.C. §1681e(b), by not following reasonable procedures to assure maximum possible accuracy. If Equifax was complying with 15 U.S.C. §1681e(b), it would place a filter or formula in its reporting system that would suppress or block accounts with a zero balance from being reported with a current status of past due or late.

58.     Plaintiff's debt on the FMCC account were fully eliminated, but Equifax continued to report the accounts with a late/past due status. If Equifax had reasonable procedures, they would not allow an account to report as though the account is currently past due, with a "$0" balance. This simply makes no logical sense. Equifax should be reporting the account as "current" or was "previously past due" and not "past due."  These accounts are reporting as though the Plaintiff is currently past due each month. With this type of reporting, Plaintiff will never be able to make their account current. Equifax lacks the procedures to avoid such faulty reporting. Equifax knows that this account was paid, however, they continue to report a current status as past due.

15 U.S.C. §1681e(b) reads as follows:

(b)  Accuracy of the Report

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures as assure maximum possible Accuracy of the information concerning the individual about whom the report relates.

59.  Equifax has been on notice that reporting an account with a $0 balance and a late status is not accurate. Equifax was a co-defendant in *Macik v. JPMorgan Chase Bank, N. A., et al.*: U.S. District Court for the Southern District of Texas, Galveston Division (Case 3:14-cv-44). Plaintiff's Counsel filed suit against Trans Union, Equifax and JPMorgan Chase bank in

Galveston, Texas, alleging that they were reporting her pay status as 90 days past due, with a zero ($) balance, even though the account was paid off five years earlier. Macik lost a home loan because the program that is used in determining eligibility specifically stated that her Chase account was late two or more times in the last twelve months, even though the loan it was referring to was paid in full five (5) years earlier.

60.     The Macik jury determined that reporting an account with a $0 balance, and a current late pay status, is not only inaccurate, but a willful violation of the FCRA. Equifax knows this because they were a co-defendant and had counsel present when the jury verdict was rendered as well as receiving an ECF copy of the ruling.  Even though this verdict was from an outside circuit, Plaintiff cites it simply to show that this inaccurate reporting is an issue that not only should be determined by a jury, but that, in fact, a jury has already returned a verdict on the issue deeming this type of reporting as inaccurate and a willful violation of the FCRA.

### *Third Parties have viewed Plaintiff's Equifax's Credit Report*

61. The negative tradeline(s) reported by FMCC on Plaintiff's Equifax Credit report have been viewed by third parties all to the detriment and loss of the Plaintiff.

62.      The following potential extenders of credit have reviewed Plaintiff's Equifax Credit report and viewed the inaccurate FMCC account on it:

      a.  XXXX on MONTH, DAY YEAR;

      b.  XXXX on MONTH, DAY YEAR;

      c.  XXXX on MONTH, DAY YEAR;

      d.  XXXX on MONTH, DAY YEAR.

63.     Plaintiff has suffered actual harm due to Equifax still reporting the negative tradeline provided by FMCC on Plaintiff's Equifax report even though Equifax was put on notice

of the inaccurate negative reporting through Plaintiff's dispute letter.

64.     The conduct of the Defendant was the direct and proximate cause, as well as, a substantial factor in bringing about the serious injuries, damages and harm to Plaintiff that are outlined above and, as a result, Defendant is liable to compensate Plaintiff for the full amount of actual, statutory, compensatory and punitive damages, as well as, such other relief, permitted by law.

### ***FMCC's FCRA Violations***

65.     Defendant, FMCC, violated its duty under 15 U.S.C. §1681s-2(b) to conduct a reasonable and good faith investigation into Plaintiff's notice of inaccurate reporting through a dispute letter, sent via Trans Union and Equifax, and by failing to delete or correct the inaccurate information. Specifically, Plaintiff's dispute letter's put FMCC on notice that they were reporting an inaccurate current payment status on Plaintiff's account.  After receiving a dispute notice from Trans Union and Equifax, via an ACDV (Automated Credit Dispute Verification form), FMCC, did not conduct a complete, accurate or reasonable investigation into the current pay status of the Plaintiff's account. FMCC verified the inaccurate pay status that was disputed by Plaintiff and continues to report it based on information and belief. FMCC should have discovered that the information they are providing the Credit Reporting Agencies was not accurate when they researched their records and discovered they were reporting Plaintiff as *currently late* on an account with *no debt*.  FMCC knew of their current faulty reporting because Plaintiff's account has a $0 balance. Had FMCC properly investigated Plaintiff's dispute, they would have corrected the current pay status on their account and stopped reporting historical data in the account's current pay status field. It is impossible for Plaintiff to make "$0" payments to bring their account current. FMCC was made fully aware of the inaccurate reporting and failed to correct or delete the account.

The section entitled "Duty of Furnishers of Information Upon Notice of Dispute"

under 15 U.S.C. §1681s-2(b) reads:

    a.   After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute <u>with</u> regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall

        i.   conduct an investigation with respect to the disputed information:

        ii.   review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

        iii.   report the results of the investigation to the consumer reporting agency;

        iv.   if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

        v.   if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate based on the results of the reinvestigation promptly

          i modify that item of information
          ii delete that item of information
          iii permanently block the reporting of that item of information

66.    Even after being put on notice through Plaintiff's dispute letter's, FMCC continued to report historical data within a data field for the *current* status of the account. When a *current status* code is used to report historical data, the credit scoring algorithm's treat the historical data as current data. The effect is obvious. The erroneous status decreases the consumer's credit worthiness by implying that the consumer is currently late on an existing obligation. In other words,

if FMCC would have reported Plaintiff's FMCC account as previously late on their loan—an accurate reporting, Plaintiff would not be here today.

67.     FMCC willfully and negligently supplied the credit reporting agencies with information about Plaintiff that was false, misleading, and inaccurate.

68.     After receiving notice of Plaintiffs disputes, FMCC willfully and negligently failed to conduct a reasonable investigation of the inaccurate information that Plaintiff disputed and continued reporting the inaccurate information to the credit bureaus.

69.     By failing to conduct a reasonable investigation into Plaintiffs disputes, FMCC negligently violated § 1681s-2(b).

70.     Alternatively, by willfully failing to conduct a reasonable investigation FMCC willfully violated § 1681s 2(b).

**Industry Guidelines cannot negate Defendant's obligations under the FCRA**

71.     Neither Defendant can rely on their industry guidelines as a defense in this matter. Please see *EMILY COULTER, Plaintiff, v. CHASE BANK USA, N.A., Defendant."* We agree with Plaintiff that Defendant may not use these guidelines as a defense here. Notably, Defendant does not cite to any legal authority for the proposition that adherence to these industry guidelines shields it from FCRA liability. (*See* ECF No. 86 at 15-16.) Indeed, the relevant case law plainly runs counter to this argument. *See, e.g.*, *Florence v. Cenlar Fed. S&L*, No. 16-587, 2018 U.S. Dist. LEXIS 34151, at *20 (D. Nev. Mar. 1, 2018) ("industry guidelines—such as Metro 2—do not establish the standards for accuracy under the FCRA."); *Burrows v. Experian Info. Sols., Inc.*, No. 16-6356, 2017 U.S. Dist. LEXIS 39845, at *21-22 (N.D. Cal. Mar. 20, 2017) ("FCRA does not mandate compliance with Metro 2 or any other particular set of industry standards."). EMILY

COULTER, Plaintiff, v. CHASE BANK USA, N.A., Defendant., No. CV 18-1538, 2020 WL 5820700, at *12 (E.D. Pa. Sept. 30, 2020)

72.        The negative tradeline(s) reported by FMCC on Plaintiff's Trans Union Credit report have been viewed by third parties all to the detriment and loss of the Plaintiff.

73. Plaintiff has suffered actual harm due to Trans Union still reporting the negative tradeline provided by FMCC on Plaintiff's Trans Union report even though Defendant's were put on notice of the inaccurate negative reporting through Plaintiff's dispute letter.

74.        The conduct of Defendants was the direct and proximate cause, as well as, a substantial factor in bringing about the serious injuries, damages and harm to Plaintiff that are outlined above and, as a result, Defendants are liable to compensate Plaintiff for the full amount of actual, statutory, compensatory and punitive damages, as well as, such other relief, permitted by law.

## DEMAND FOR JURY TRIAL

75.        Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants based on the following requested relief:

   a.   Actual damages pursuant to 15 U.S.C. §1681;

   b.   Statutory damages pursuant to 15 U.S.C. §1681;

   c.   Punitive damages pursuant to 15 U.S.C. §1681;

   d.   Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n, §1681o; and

   e.   Such other and further relief as may be necessary, just and proper.

Respectfully submitted,
BY: /s/ Matthew Weisberg             BY: /s/ Gary Schafkopf

MATTHEW B. WEISBERG, ESQ
WEISBERG LAW
Attorney ID No. 85570
7 South Morton Ave. 19070
Morton, PA
610-690-0801
Fax: 610-690-0880
DATED:11-3-2020

GARY SCHAFKOPF, ESQ
SCHAFKOPF LAW, LLC
Attorney ID No. 83362
11 Bala Ave
Bala Cynwyd, PA 19004
610-664-5200 Ext 104
Fax: 888-238-1334
DATED: 11-3F56YO0-2020